GOODSITT, Respondent, vs. OBERST and others, Appellants.

*March 8—April 5, 1927.*

*Landlord and tenant: Leasehold interest: Rights of unpaid assignor: Lien on leasehold.*

An assignee of the vendor of a leasehold interest, there being no default on the part of the purchaser or any situation requiring the hastening of the time of payment, is not entitled to have an equitable lien declared on the leasehold for the unpaid purchase price or for judgment for such amount.

APPEAL from an order of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

The trial court sustained plaintiff's complaint upon demurrer.

It appears from the complaint, verified February 5, 1926, that a ninety-nine-year lease was given in 1914 on the northwest corner of Eleventh street and Grand avenue, Milwaukee. In 1925 one Thiermann had contracts of purchase with the holders of such leasehold interest. Thereafter by several writings Thiermann agreed to sell such interest to one Ellison, through whom plaintiff asserts his right of action.

In December, 1925, by two several writings Ellison agreed to sell the same to the defendant *Oberst*.

January 9 and 11, 1926, and pursuant to the foregoing contracts, written assignments and conveyances of said leasehold were made to and then by Thiermann directly to the defendant *Oberst,* and all thereafter duly forthwith recorded.

Of the material parts of the many written agreements concerning this transaction and of which copies of several were made parts of the complaint, it is only deemed necessary to recite or quote as follows:

That *Oberst* was to buy the leasehold and pay $54,500 in a specified manner, including the assuming of mortgages aggregating $20,000, a cash payment of $14,000 to a designated bank, $6,000 to Thiermann, and to Ellison a certain sum in cash and a balance in ninety-day, discountable notes.

Ellison thereby assigned to *Oberst* all his right, title, and interest in the said leasehold; his contracts with Thiermann; and all rights and equities against the then holders of said leasehold. He agreed to defend, at his expense, any lawsuits that might be necessary to establish the validity of the contract.

Ellison acknowledged the then payment of $5,000 and $1,000 in cash, and further recited as follows:

"I agree to accept promissory notes of the said *R. E. Oberst* in the sum of $8,000, payable to me ninety days from the date of the consummation of the transfer of the aforementioned leasehold, which have at the signing hereof been deposited in escrow in the Franklin State Bank of Milwaukee, to be by said bank delivered to me upon the consummation and completion of the transfer of the aforementioned leasehold . . . to the said *Oberst."*

He also agreed that in case performance could not be had, he would return the cash payment and "release the said notes held in escrow by the Franklin State Bank."

The substance of the writing executed by Ellison on December 9, 1925, to plaintiff, and pursuant to which plaintiff brought this action, provided that for value received Ellison sells, transfers, assigns, sets over, and delivers to plaintiff all his right, title, interest, and claim in and to the sum of $8,000 due and owing or to become due and owing to him from *Oberst* by reason of the contracts aforesaid and pertaining to the ninety-nine-year lease on the said property. It further authorized and employed the plaintiff in Ellison's name to collect said sum of money due him or receive and collect the notes executed by said *Oberst*—"as deposited in escrow with the Franklin State Bank,"—together with all right of action thereon, and to give receipts for the payment or delivery thereof as fully as the said Ellison could do. This was followed with the usual grant of power to an attorney in fact, with power of substitution and revocation and ratifying and confirming all that might lawfully be done under such writing.

The complaint further recited that the defendant *Oberst* has "failed, neglected, and refused to execute and deliver that part of the purchase price which was to be evidenced by his promissory notes" of $8,000 according to the terms of the contract above recited, and has wholly failed and refused to pay to the said Ellison or to the plaintiff said $8,000, "being the principal amount for which said purchase price was to be evidenced by promissory notes."

It further alleged that the defendant *Oberst* had assigned to the defendants *Richter* and *Schroeder,* each an undivided one-third interest in the leasehold, they having knowledge of the transactions above recited.

Ellison was made a party defendant.

The prayer for judgment was that plaintiff be adjudged to have an equitable lien upon the interest of the defendants *Oberst, Richter,* and *Schroeder* in and to the said leasehold for the unpaid purchase price thereof superior to the lien or

interests of the defendants, and that the defendants be barred and foreclosed of all right, lien, or equity of redemption in the leasehold, and that the same be sold and the plaintiff be paid the amount of said lien out of the proceeds of such sale, with costs and expenses, and that in case of deficiency the plaintiff have judgment against defendant *Oberst* for such amount, and such other and further relief as may be equitable.

Defendants *Oberst, Richter,* and *Schroeder* demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action.

From the order overruling the demurrer defendants appeal.

*Jacob S. Rothstein* of Milwaukee, for the appellants.

For the respondent there was a brief by *Walter A. John* and *Charles D. Ashley,* both of Milwaukee, and oral argument by *Mr. John.*

ESCHWEILER, J.   Numerous questions are presented and argued on this appeal.   We deem it unnecessary to discuss them all.

The complaint, making as it did sundry of the many written contracts involved in the rapid shifting of the interests in this leasehold parts thereof, discloses that there was, at the time this action was commenced in February, 1926, and immediately following the transfer of all interests in the leasehold from the then holders to the defendant *Oberst,* a complete performance by *Oberst* of all that he had agreed to do in his contracts with Ellison.   There is no showing of any default on his part, of any insolvency or of present condition which requires or would authorize the interposition of a court of equity to hasten the time of payment of the $8,000 which it was expressly agreed should be payable to Ellison by *Oberst,* but through the medium of promissory notes having ninety days to run.

In Ellison's contracts with *Oberst* and in the document Ellison gave plaintiff there was expressly recognized that there was then on deposit in escrow with a selected and designated depositary the promissory notes for $8,000. This was exactly that which Ellison required of *Oberst* he should do, and it was, by Ellison's own express recognition, admittedly done. *Oberst's* assignment of an undivided one-third each to the defendants *Richter* and *Schroeder* was a matter entirely within his rights and in recognition of or at least with full knowledge in the takers of whatever rights Ellison might have.

No valid ground has been here suggested upon which it can properly be said that a court of equity should forthwith and immediately upon the executing and delivery of such solemn declarations of satisfaction with the terms of such contracts, and after admittedly complete and full performance thereof, now set such contract terms aside and give to either plaintiff or to Ellison very substantially different terms and conditions than those the parties made for themselves. Unless new contract terms are to be substituted or written into the contracts between Ellison and *Oberst* by the court, there is nothing for a court of equity to do, the parties having made their valid agreements and the complaint showing full compliance.

The complaint is barren of any showing that the depositary would not or could not deliver on demand to Ellison or plaintiff the promissory notes admittedly in its possession. If those were so demanded and delivered, Ellison would presently receive all of that for which he bargained. There is no showing of any such breach of contract or of duty by *Oberst* as to require us to now even consider what, if anything, in the nature of the purely equitable remedy to enforce a vendor's lien might exist under the contracts set forth in the complaint, especially so when it is realized that the $8,000 coming to Ellison from *Oberst* is no part of the real

purchase price of the leasehold proper, but merely the profit coming to Ellison in the sale of his option to buy Thiermann's option to buy the leasehold.

The plaintiff's rights to equitable relief were even more shadowy than any possible rights 'in' Ellison. The writing by which alone plaintiff can appear on the scene was, as appears from its substance recited in the above statement, such as gave him but a right to demand possession of and then payment of certain promissory notes executed by *Oberst*. He had no authority to repudiate the transactions between his principal and *Oberst,* change their terms, or hasten payment of the notes. He had nothing to do with the transfer of the leasehold, for that was done and to be done by others.

The demurrer should have been sustained to the complaint upon either or both of the foregoing grounds.

*By the Court.*—Order reversed. .